1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DAVID SWANSON, through his guardian          No.  2:14-cv-01431-KJM-DB
     ad litem HEATHER SWANSON-
12   HOUSTON, and on her own behalf,

13                  Plaintiff,                     ORDER

14        v.

15   YUBA CITY UNIFIED SCHOOL
     DISTRICT and SUTTER COUNTY
16   SUPERINTENDENT OF SCHOOLS,

17                  Defendant.

18

19

20        David Swanson, a special needs student in his twenties, and Heather Swanson-

21   Houston, his mother and guardian ad litem (collectively, Plaintiffs), bring this action under the

22   Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*, and Section 504 of

23   the Rehabilitation Act of 1973, 29 U.S.C. § 749 *et seq.*  This matter is before the court on the

24   parties' cross-motions for summary judgment.  Pls.' Am. Mot. for Summ. J. (Pls.' MSJ), ECF

25   No. 44; Defs.' Mot. for Summ. J. (Defs.' MSJ), ECF No. 46.

26        For the following reasons, the court grants Defendants' motion for summary

27   judgment in its entirety and denies Plaintiffs' motion for summary judgment in its entirety.

28   /////

                                              1

1    I.        STATUTORY, FACTUAL AND PROCEDURAL BACKGROUND

2              A.       Statutory Background

3              The IDEA requires all states receiving federal education funds to provide disabled

4    children a free appropriate public education (FAPE).  20 U.S.C. § 1412(a)(1)(A).  The FAPE

5    must be tailored to each student's unique needs through an individualized education program

6    (IEP).  *Id.* § 1401(9).  An IEP is a written statement for each disabled student that includes goals,

7    measures of progress, and a statement of special education and supplementary aids and services

8    the student will be provided.  *Id.* § 1414(d)(1)(A)(i).  The IEP must provide the disabled student a

9    FAPE in the least restrictive environment.  *J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*,

10   626 F.3d 431, 448 (9th Cir. 2010) (citations omitted).  The IDEA provides that an IEP shall

11   contain a "statement of the special education and related services" that will be provided to a child.

12   *Id.* § 1414(d)(1)(A)(i)(IV).  The statute defines these related services as including "school nurse

13   services designed to enable a child with a disability to receive a free appropriate public

14   education."  *Id.* § 1401(26)

15             A party may request an administrative "due process hearing" before an ALJ to

16   challenge any matter related to the provision of a FAPE.  20 U.S.C. §§ 1415(b)(6), (f), (k)(3).

17   Violations of the IDEA can arise in two situations: (1) a school district may not comply with the

18   procedures outlined in the IDEA; or (2) the IEP developed by the school district may not be

19   "reasonably calculated to enable the child to receive educational benefits."  *Bd. of Educ. of*

20   *Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206–07 (1982); *M.M. v. Lafayette*

21   *Sch. Dist.*, 767 F.3d 842, 852 (9th Cir. 2014).  The IDEA requires a plaintiff to exhaust his or her

22   administrative remedies before filing a civil action.  20 U.S.C. § 1415(l).

23             B.       Factual Background

24             David Swanson currently is 24 years old; he has autism and insulin-dependent

25   Type 1 diabetes.  Defs.' Resp. to Pls.' Separate Statement of Undisputed Material Facts (Defs.'

26   Resp. UMF) 2:25–28, ECF No. 49-1.  He was eligible for special education services under the

27   IDEA until he aged out of the public education system during the summer of 2014, when he was

28   22.  *Id.*  David first began receiving special education services at the age of 3 for his autism, and

1    he has very low cognitive abilities.  *Id.* at 3:2–14.  He is nonverbal and communicates by using a

2    combination of gestures, grunts, and limited sign language.  *Id.*  Due to his impairments, David

3    has seriously delayed academic, self-help, and social skills.  *Id.*

4             David's Type 1 diabetes is unusually unstable and difficult to control.  *Id.* at 4:28.

5    David's mother, Ms. Swanson-Houston, provides his diabetes care at home.  *Id.* at 4:3–21.  She

6    does not have a nursing license, but she received two weeks of training through Sutter Memorial

7    Hospital in diabetic care.  *Id.*  When David was first diagnosed with diabetes in 2005, Ms.

8    Swanson-Houston showed the school nurse at the time how to use an insulin pen to administer

9    David's insulin.  *Id.* at 4:22–27.  Beginning in April 2009, Licensed Vocational Nurse (LVN)

10   Annette Armstrong began providing David's diabetes care at school.  *Id.* at 7:6–9.  Outside of the

11   training provided to all LVNs, Armstrong received no specialized training in autism or diabetes,

12   and she had not met David prior to becoming his LVN.  Office of Administrative Hearings

13   (OAH) Decision Factual Findings ¶ 62.

14             In May 2012, LVN Armstrong reported a teacher's alleged abuse of David to the

15   Sutter County Superintendent of Schools (County) and Adult Protective Services; Armstrong was

16   reassigned to care for another student pending the investigation.  Am. Compl. ¶ 11, ECF No. 26;

17   Defs.' MSJ 7:26–28.  Ms. Swanson-Houston then filed a due process complaint against

18   Defendants with the OAH regarding David's educational placement, complaining that Defendants

19   "failed to offer one-to-one LVN services by an LVN trained to meet David's unique needs."

20   Administrative Record (AR) 71.  On October 23, 2012, the parties reached a settlement

21   agreement whereby Defendants agreed, in relevant part, to allow LVN Armstrong to continue

22   providing David's care as long as she was employed by either the Yuba City Unified School

23   District (District) or the County.  Am. Compl. ¶¶ 12–13; Defs.' MSJ 7:21–28.

24             On February 19, 2013, the County placed LVN Armstrong on administrative leave

25   and assigned Alison Anderson, Registered Nurse (RN), as David's one-to-one nurse.  Am.

26   Compl. ¶¶ 19, 22; Defs.' MSJ 8:9–11.  The parties agree that both RNs and LVNs have the

27   requisite qualifications to provide David's medical needs at school.  July 28, 2016 Mot. Hr'g,

28   ECF No. 53.  In February 2013, RN Anderson had twenty-three years' experience as a registered

1   nurse and thirteen years' experience as a school nurse.  AR 847–48.  Additionally, as LVN

2   Armstrong's supervisor, RN Anderson had directly overseen David's daily diabetic care from

3   November 2012 to February 19, 2013.  *Id.*  However, Ms. Swanson-Houston believed Defendants

4   were breaching their settlement agreement by assigning RN Anderson to care for David because

5   she believed RN Anderson "had failed to develop a health plan and had only met with David

6   twice."  Pls.' MSJ 11:8–11; *see* Defs.' Opp'n to Pls.' MSJ (Defs.' Opp'n) 9:6–11, ECF No. 49.

7   February 19, 2013 was the last day David attended school.  Pls.' MSJ 11:1–15:14; Defs.' MSJ

8   9:1–2.  The next day, February 20, 2013, Ms. Swanson-Houston revoked consent for Defendants'

9   personnel to provide David with medical care.  Am. Compl. ¶ 22; Defs.' MSJ 8:11–13.

10          On February 21, 2013, the County sent Ms. Swanson-Houston a letter and email

11  informing her that she must provide Defendants with authorization to provide David with diabetes

12  care in order for him to return to school.  Defs.' Resp. UMF 9:6–16.  Ms. Swanson-Houston

13  refused to sign a new authorization form.  *Id.* at 8:25–9:5.  Defendants maintain they were ready

14  to meet David's needs with a one-to-one paraprofessional and a one-to-one LVN should Ms.

15  Swanson-Houston sign a medical authorization form.  *See id.* at 10:11–17.  On August 19, 2013,

16  Defendants offered David an IEP that included a one-to-one nurse for 420 minutes daily, five

17  days per week, which provided David with individual nursing services at home prior to school,

18  during the bus ride to school, the entirety of the school day, the bus ride home, and at David's

19  home after school.  *Id.* at 11:19–28.  Both parties insisted they be allowed to choose who would

20  provide David's diabetic care while at school.  *See* Pls.' MSJ 11:01–15:14; Defs.' MSJ 8:08–

21  9:02.

22          C.      Procedural Background

23          On October 30, 2013, the District filed with OAH a due process complaint against

24  Ms. Swanson-Houston, alleging she continued to request special education services for David but

25  had refused to allow any of Defendants' employees to provide David's necessary one-to-one

26  nursing services.  AR 10.  On December 2, 2013, Plaintiffs filed their own due process complaint

27  against Defendants, alleging, in pertinent part, that Defendants denied David a FAPE by failing to

28  provide him with appropriate one-to-one LVN services.  AR 77.  The OAH consolidated the two

1   cases on December 19, 2013.  Pls.' MSJ 16:10–12; Defs.' MSJ 5:13–15.  On December 20, 2013,

2   the ALJ granted the District's motion to dismiss all discrimination and retaliation claims under

3   Section 504 of the Rehabilitation Act of 1973,  29 U.S.C. § 749 *et seq*, leaving four issues to be

4   addressed in the administrative proceeding:

5
6   [Student's Issue for Hearing #1:] Whether District's and County's November 8, 2012 and August 19, 2013 [IEP] denied Student a [FAPE] by: (a) Failing to provide Student with adequate one-to-one services by [an LVN] to meet his unique needs regarding diabetes and communication; and (b) Failing to offer Student a placement that met his unique needs, especially sensitivity to sound, and by offering a classroom which contained too many students.
7
8

9   [Student's Issue for Hearing #2:] Whether District and the County denied [David] a FAPE by failing to provide him with special education and related services from February 21, 2013, through the present; and failing to permit [his mother] to choose the LVN, or family member, to provide [David] with diabetic care services at school.
10
11
12

13   [District's Issue for Hearing #1:] Whether District's August 19, 2013 [individualized education program (IEP)] denied [David] a FAPE by failing to offer an appropriate nurse.
14

15   [District's Issue for Hearing #2:] Whether Parent needs to permit District to have meaningful access to Student's physicians and physician orders regarding his diabetic care so that District may develop and/or implement a diabetes medical management plan.
16

17   OAH Decision 4–5.  During the five-day due process hearing that commenced on February 3,

18   2014, the ALJ heard the sworn testimony of nine witnesses and received documentary evidence.

19   *Id.* at 3–4.

20          On April 7, 2014, the ALJ issued a thirty-two-page single-spaced decision in favor

21   of Defendants on all matters, holding Defendants offered David appropriate nursing services and

22   did not commit any procedural or substantive violations of the IDEA.  *Id.* at 5.  The decision

23   contains extensive factual and credibility findings.  Notably, the ALJ observed that Ms. Swanson-

24   Houston "failed to assert any specific complaint regarding the County selected nurse,

25   Ms. Anderson."  OAH Decision Factual Findings ¶ 58.  The ALJ also found that portions of Ms.

26   Swanson-Houston's testimony were "intentionally misleading[, which] diminished the [overall]

27   persuasiveness of [her] testimony."  *Id.* ¶ 61.  Additionally, the ALJ acknowledged Plaintiffs'

28   argument that Ms. Swanson-Houston was willing to provide David's diabetic care at school

5

1    herself, but he rejected it as being "not consistent with [her] testimony or conduct."  OAH

2    Decision Legal Conclusions ¶ 32.

3            On June 16, 2014, Plaintiffs initiated the present action seeking review of the

4    OAH decision as provided by 20 U.S.C. § 1415(i)(2)(A).  Pls.' MSJ 18:18.  On June 27, 2016,

5    Plaintiffs moved for summary judgment under Federal Rule of Civil Procedure 56, arguing

6    Defendants denied David a FAPE by: (1) improperly denying Plaintiffs the right to choose

7    David's diabetes care provider during the school day; (2) improperly making the provision of

8    special education contingent on Ms. Swanson-Houston's signing a form that would authorize

9    Defendants' personnel to provide David's diabetes care during the school day; and (3) failing to

10   provide an adequate nurse to care for David's diabetes while at school.  *Id.* at 26:22–27:27.  On

11   July 1, 2016, Defendants cross-moved for summary judgment or, in the alternative, partial

12   summary judgment on the basis that the ALJ correctly found Defendants offered David a FAPE.

13   Defs.' MSJ 21:13–23.  Both parties filed opposition briefs.  Pls.' Opp'n to Defs.' MSJ, ECF

14   No. 48; Defs.' Opp'n.  On July 19, 2016, Plaintiffs filed a second amended motion for summary

15   judgment.  ECF No. 50.  However, the court struck this motion because it was untimely and did

16   not comply with the pretrial scheduling order or the local rules.  ECF No. 52.  On July 22, 2016,

17   Defendants replied to Plaintiffs' opposition brief.  ECF No. 51.  On July 28, 2016, the court held

18   a hearing, at which Martha Millar appeared for Plaintiffs and Daniel Jay appeared for Defendants.

19   ECF No. 53.

20   II.      STANDARD OF REVIEW AND DEFERENCE

21           A court must grant summary judgment under Rule 56(a) of the Federal Rules of

22   Civil Procedure when the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

23   A motion for summary judgment under the IDEA differs from an ordinary summary judgment

24   motion because it "is in substance an appeal from an administrative determination."  *Capistrano*

25   *Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995).  Unlike an ordinary summary

26   judgment motion, the existence of a disputed issue of material fact does not defeat a motion for

27   summary judgment under the IDEA.  *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1472 (9th

28   Cir. 1993); *Wartenberg*, 59 F.3d at 891–92 (observing that the inquiry is not directed at

1  discerning whether there are disputed issues of fact, but rather, whether the administrative record,

2  taken together with new evidence, establishes by a preponderance of the evidence that there has

3  been compliance with IDEA's procedures, while also giving due weight to the hearing officer's

4  determinations).

5         The text of the IDEA provides the following formulation of the standard for

6  review of an administrative decision:

7         In any action brought under this paragraph, the court—

8                (i) shall receive the records of the administrative
                 proceedings;
9

10               (ii) shall hear additional evidence at the request of a party;
                 and

11               (iii) basing its decision on the preponderance of the
                 evidence, shall grant such relief as the court determines is
12               appropriate.

13  20 U.S.C. § 1415(i)(2)(C).

14         Although courts give less deference to an administrative decision in IDEA cases

15  than in other administrative cases, full de novo review is inappropriate. *J.L. v. Mercer Island Sch.*

16  *Dist.*, 592 F.3d 938, 949 (9th Cir. 2010) (citing *J.G. v. Douglas Cty. Sch. Dist.*, 552 F.3d 786, 793

17  (9th Cir. 2008)); *see also Rowley*, 458 U.S. at 206 (1982).  Instead, courts give "due weight" to

18  the administrative proceedings in IDEA cases.  *J.L.*, 592 F.3d at 949 (citing *Douglas*, 552 F.3d at

19  793).

20         The court in *Wartenberg*, *supra*, reasoned that some deference to the

21  administrative decision "makes sense" for the same reasons deference is given to other agency

22  actions: "agency expertise, the decision of the political branches . . . to vest the decision initially

23  in an agency, and the costs imposed on all parties of having still another person redecide the issue

24  from scratch."  59 F.3d at 891 (citing *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988)).

25  The Circuit has also noted the structure of the IDEA demonstrates that Congress "intended states

26  to have the primary responsibility of formulating each individual child's education."  *Hood v.*

27  *Encinitas Union Sch. Dist.*, 486 F.3d 1099, 1104 (9th Cir. 2007).  Consequently, the court must

28  /////

1   "not substitute [its] opinions of sound educational policy for those of the school authorities which

2   [it is] reviewing." *Adams v. State of Oregon*, 195 F.3d 1141, 1149 (9th Cir. 1999).

3              The quality of the administrative decision determines the amount of deference the

4   district court should afford it.  Greater deference should be given to the ALJ's findings when they

5   are "thorough and careful." *K.D. ex rel. C.L. v. Dep't of Educ.*, 665 F.3d 1110, 1117 (9th Cir.

6   2011); *Hood*, 486 F.3d at 1104; *see also Wartenberg*, 59 F.3d at 891–92 (finding that "[t]he

7   hearing officer's report was especially careful and thorough, so the judge appropriately exercised

8   her discretion to give it quite substantial deference"); *Ojai Unified Sch. Dist.*, 4 F.3d at 1476

9   (holding that an ALJ's decision is entitled to "substantial weight" where the "decision evinces

10  [the ALJ's] careful, impartial consideration of all the evidence and demonstrates his sensitivity to

11  the complexity of the issues presented").  However, courts retain the freedom to decide

12  independently how much weight to give the ALJ's findings and conclusions. *Ashland Sch. Dist.*

13  *v. Parents of Student R.J.*, 588 F.3d 1004, 1009 (9th Cir. 2009).

14  III.    DEFERENCE

15             Plaintiffs argue this court should not afford the ALJ's decision deference for eight

16  separate reasons.  *See* Pls.' MSJ 19:4–26:22.  The court rejects each argument, as follows.

17             Plaintiffs' first three arguments all concern factual determinations as to whether

18  Ms. Swanson-Houston waived medical liability so that she, or someone else of her choosing,

19  could administer David's diabetes care at school.  Specifically, Plaintiffs first contend "[t]he ALJ

20  erred by repeatedly stating in his decision the misinformation" that Ms. Swanson-Houston would

21  only allow LVN Armstrong to treat David's diabetes at school.  *Id.* at 19:4–24.  Second, Plaintiffs

22  contend "[t]he ALJ erred by ignoring the evidence that Ms. Swanson-Houston repeatedly

23  requested of [Defendants] that she [herself] be allowed to provide David's diabetes care during

24  the day or [else] elect to have someone else provide it." *Id.* at 19:25–21:3.  Third, Plaintiffs

25  contend "[t]he ALJ erred by stating in his decision that Ms. Swanson-Houston never requested a

26  waiver." *Id.* at 21:4–22:15.  All three of Plaintiffs' arguments either mischaracterize or ignore

27  pertinent findings in the ALJ's decision.  The ALJ explicitly acknowledged and rejected

28  Plaintiffs' arguments, finding the contrary evidence to be more persuasive because Plaintiffs'

1    arguments were "not consistent with [David's m]other's testimony or conduct."  OAH Decision

2    Legal Conclusions ¶¶ 32–36.  In addition, as to the waiver, Plaintiffs' counsel at hearing could

3    point to no time when Ms. Swanson-Houston had explicitly requested a waiver.

4            Fourth, Plaintiff argues "[t]he ALJ erred by ignoring . . . that [Defendants] made

5    the provision of special education for David contingent on Ms. Swanson-Houston signing an

6    authorization form [that states,] 'Signing this form is voluntary . . . .  Refusing to sign this

7    authorization will not affect the LEA's [local education agency] commitment to provide a quality

8    education for my child.' "  Pls.' MSJ 22:16–23:23 (quoting Waiver Form, AR at 385).  This

9    argument again mischaracterizes the ALJ's decision.  Far from ignoring this issue, the ALJ fully

10   discussed it in conjunction with the District's contention that it needed authorization to consult

11   with David's physician in order to deliver nursing services safely.  *See* OAH Decision Legal

12   Conclusions ¶¶ 39–42.

13           Fifth, Plaintiffs contend "the ALJ erred by stating in his Decision that 'during her

14   testimony, [Ms. Swanson-Houston] failed to assert any specific complaint regarding [RN]

15   Anderson.'"  Pls. MSJ 23:23–24:2 (quoting OAH Decision Factual Findings ¶ 58).  For support,

16   Plaintiffs cite a passage from the hearing transcript in which Ms. Swanson-Houston testified that

17   (1) RN Anderson had failed to supervise David directly, and (2) she had lodged a complaint

18   against RN Anderson with the California Board of Registered Nursing for not ensuring David's

19   health records were kept private.  TR at 957–59.  However, Plaintiffs fail to explain how these

20   examples made RN Anderson unqualified to treat David.  Additionally, the ALJ's omission of

21   this testimony is consistent with his determination that Ms. Swanson-Houston's testimony was

22   not credible.  *See* OAH Decision Factual Findings ¶ 58; OAH Legal Conclusions ¶¶ 32–33.

23           Sixth, Plaintiffs contend the ALJ erred in characterizing the testimony of RN

24   Keenan, who served as an independent assessor at the August 2013 IEP meeting, as describing

25   David as a "nurse-dependent pupil who required constant and comprehensive services from a

26   one-to-one nurse while at school."  Pls.' MSJ 24:3–24:19 (quoting OAH Decision Factual

27   Findings ¶ 43).  For support, Plaintiffs cite the hearing transcript in making the following

28   argument: "As for nurse Keenan's testimony, she testified that she does not think that David

9

1    requires nursing staff and medical information for him to be safe at school." *Id.*  This page of the

2    transcript, however, reflects the testimony of Ms. Swanson-Houston. *See* TR 1212.  This

3    misleading citation aside, the rest of Plaintiffs' argument can be distilled down to the proposition

4    that because Ms. Swanson-Houston cares for David when he is not in school, and because she is

5    not a nurse, David is not a "nurse-dependent pupil."  This argument ignores the thrust of RN

6    Keenan's testimony.  RN Keenan describes David as "one of the most intensive [sic] managed

7    students with one of the highest degrees of medical complexity," TR 1176, and testified that

8    "anyone providing direct care . . . for David should be a licensed nurse with detailed experience

9    with David's symptoms [and] David's communication needs."  TR 1172–73.  Given this

10   testimony and the lack of any contrary evidence in the record, the ALJ did not err.

11          Seventh, Plaintiff contends the ALJ erred by unilaterally rewriting District Issue

12   #1 in a way that "narrowed [the scope of] the issue" so that it "substantially favored the

13   defendants."  Pls.' MSJ 24:20–25:25.  The issue was phrased before and after the hearing,

14   respectively, as follows:

15          [Before the OAH hearing:] Does the District's August 19, 2013
              IEP, including its offer of one-to-one LVN employed by either
16            County or District, provide Student with a FAPE in the least
17            restrictive environment?

18   Defs.' Resp. UMF 17:3–6.

19          [In the ALJ's final decision:] Whether the District's August 19,
              2013 IEP denied student a FAPE by failing to offer an appropriate
20            nurse.

21

22   OAH Decision 5.

23          An ALJ may generally rephrase an issue when the changes are "inconsequential"

24   and do not change the ALJ's consideration of the parties' arguments.  *See J.W.*, 626 F.3d at 442

25   (affirming an ALJ's reorganization of an issue when the "reorganization was inconsequential to

26   [the student]" and the ALJ still addressed the student's arguments).  Here, although the ALJ

27   rewrote the issue to focus on the dispositive dispute in this case, the dispute over David's nurse,

28   he still considered the August 19, 2013 IEP as a whole.  For instance, the ALJ discussed in detail

1   the terms of the August 19 IEP, noting David's educational progress, performance, and goals;

2   medical needs; and specialized academic instruction.  OAH Decision Factual Findings ¶¶ 29–37.

3   The ALJ also considered David's unique communication needs, OAH Decision Legal

4   Conclusions ¶ 18; the "nature, severity, and complexity of [David]'s diabetes, *id.* ¶ 10; and

5   David's sensitivity to "environmental factors, including noise and the number of peers" in his

6   classroom, *id.* ¶ 21.  It is clear from the ALJ's decision that the changes he made to the issue were

7   inconsequential because they did not change his consideration of Plaintiffs' arguments.

8            Finally, Plaintiff argues the ALJ "misstated, misapplied, and ignored relevant law"

9   by failing to cite Title 5 California Code of Regulations section 604 and by citing a vacated case,

10  *Am. Nurses Ass'n v. O'Connell*, 185 Cal. App. 4th 393, *review granted and opinion superseded*

11  *sub nom. Am. Nurses Ass'n v. O'Connell*, 239 P.3d 651 (Cal. 2010), *and rev'd sub nom. Am.*

12  *Nurses Ass'n v. Torlakson*, 57 Cal. 4th 570 (2013).  Pls.' MSJ 25:26–26:22.  However, section

13  604 is a permissive regulation providing that a student's parent or designee may administer the

14  student's medication at school; nothing in the statute suggests a school must allow the parent or

15  designee to administer the student's medication.  Cal. Code Regs. tit. 5, § 604(c)–(d) ("The

16  pupil's parent or legal guardian *may* administer medication to the pupil . . . .  An individual

17  designated to do so by the parent or legal guardian may administer medication to the pupil . . . .").

18  Additionally, the ALJ cited *Am. Nurses Ass'n v. O'Connell* only for the proposition that the

19  administration of insulin for diabetes management requires medically related training.  OAH

20  Decision Legal Conclusions ¶ 7.  The case was reversed on other grounds, and the proposition

21  that the administration of insulin, even when completed by unlicensed individuals, requires

22  training remains good law.  *See Torlakson*, 57 Cal. 4th at 591 (observing that California

23  "permit[s] trained, unlicensed school personnel to administer prescription medications, including

24  insulin, in accordance with written statements of individual students' treating physicians, with

25  parental consent . . .").

26          For the above-stated reasons, Plaintiffs' arguments are without merit.  The ALJ's

27  decision reviewed together with the transcript from the due process hearing demonstrates that the

28

1    ALJ considered all of the evidence and issues presented carefully and impartially.  This court

2    therefore affords substantial weight to the ALJ's findings.

3    IV.      FINDINGS SUPPORTED BY A PREPONDERANCE OF THE EVIDENCE

4              The court's task, then, is to determine whether a preponderance of the evidence

5    supports the ALJ's findings that Defendants did not deny David a FAPE.  This court's inquiry is

6    twofold.  The "procedural prong" requires the court to consider whether the state complied with

7    the procedures set forth in the IDEA.  *Amanda J. v. Clark Cty. Sch. Dist.*, 267 F.3d 877, 890 (9th

8    Cir. 2001); *Rowley*, 458 U.S. at 206–07.  Under the "substantive prong," the court must determine

9    if the IEP developed through those procedures was reasonably calculated to enable the child to

10   receive educational benefits.  *Amanda J.*, 267 F.3d at 890; *Rowley*, 458 U.S. at 206–07.

11        A.       Compliance with IDEA Procedures

12             In analyzing whether the District offered David a FAPE under the IDEA, the court

13   first evaluates whether Defendants complied with the IDEA's procedural requirements.  *Rowley*,

14   458 U.S. at 206–07.  Not every procedural violation results in the denial of a FAPE, however.

15   *J.L.*, 592 F.3d at 953.  A procedural violation denies a FAPE if it "results in the loss of an

16   educational opportunity, seriously infringes the parents' opportunity to participate in the IEP

17   formulation process or causes a deprivation of educational benefits."  *Id.*; 20 U.S.C.

18   § 1415(f)(3)(E)(ii).  Plaintiffs' motion for summary judgment focuses only on alleged substantive

19   deficiencies in Defendants' provision of a FAPE—specifically, who should provide David with

20   diabetic care during the school day.  Plaintiffs conceded at hearing that Defendants did not violate

21   IDEA's procedural safeguards.  Furthermore, nothing in the record suggests such violations, and

22   the ALJ found that Defendants consistently offered David a FAPE.  This court independently has

23   examined the procedures giving rise to this case and finds that all of the requirements of

24   20 U.S.C. § 1415 were met.  Therefore, the court finds this prong is satisfied.

25        B.       Substantive Sufficiency of the FAPE

26             Having found that Defendants complied with the procedural requirements of the

27   IDEA, the court must determine whether the FAPE Defendants offered to David satisfied the

28   substantive prong of the *Rowley* test.  *Amanda J.*, 267 F.3d at 890.  Plaintiffs assert that

12

1   Defendants denied David a FAPE by refusing to allow his mother or her designee to provide his

2   diabetes care during the school day.  Pls.' MSJ 26:22–27:9.  However, Plaintiffs produced no

3   credible evidence at the due process hearing showing it was necessary for Defendants to allow

4   Ms. Swanson-Houston or her designee to provide David's diabetic care for him to receive a

5   FAPE.  Rather, the ALJ's determination that this argument was a red herring, and that Plaintiffs'

6   true motive was to force Defendants to have LVN Anderson care for David at school, is

7   supported by Plaintiffs' instant motion before the court.  First, Plaintiffs acknowledge that

8   Defendants asked Ms. Swanson-Houston to "come to school to train the newly hired LVN[, and

9   she] responded that she was unavailable to provide training."  *Id.* at 14:24–27.  Then, in the very

10  next sentence, Plaintiffs argue Ms. Swanson-Houston requested that she be allowed to "waive

11  medical liability and provide [David's] care herself."  *Id.* at 14:27–15:01.  Given David's serious

12  medical needs, these positions are logically inconsistent; if she was available to care for David the

13  entire school day, it stands to reason she could have made herself available to help train a new

14  LVN.  This inconsistency, coupled with a review of Ms. Swanson-Houston's correspondence

15  with Defendants, wherein she repeatedly demands they reinstate LVN Armstrong, supports the

16  ALJ's determination that her testimony that she would have provided David's nursing services

17  was not credible.  The ALJ was in the best position to assess Ms. Swanson-Houston's credibility

18  because his observation of her live testimony enabled him "to see [her] physical reactions to

19  questions, to assess [her] demeanor, and to hear the tone of [her] voice."  *Ms. S. ex rel. G. v.*

20  *Vashon Island Sch. Dist.*, 337 F.3d 1115, 1127 (9th Cir. 2003) (quoting *United States v. Mejia*, 69

21  F.3d 309, 315 (9th Cir. 1995)), *superseded on other grounds by* 20 U.S.C. § 1414(d)(1)(B);

22  *Amanda J.*, 267 F.3d at 889 (finding, in the IDEA context, that the administrative hearing officer

23  "who receives live testimony is in the best position to determine issues of credibility").

24  Accordingly, his credibility findings are entitled to deference on this appeal.

25          Plaintiffs also argue David was denied a FAPE because Defendants made David's

26  special education contingent on the signing of a form that itself indicated signing the form was

27  voluntary.  Pls.' MSJ 27:9–22.  This argument ignores the next sentence of the form, which states

28  that not signing will not affect Defendants' "commitment" to providing David with a quality

13

1    education.  *Id.* (citing AR 385; TR 962, 967).  A preponderance of the evidence supports the

2    ALJ's findings that regardless of whether Ms. Swanson-Houston signed the authorization form,

3    Defendants remained committed to offering David a FAPE, and that the voluntariness of the form

4    has no bearing on whether the IEP offered to David satisfied the requirements under the IDEA.

5              Plaintiffs' final argument is that Defendants' choice of nurse did not constitute

6    provision of a FAPE in the least restrictive environment.  *Id.* at 27:22–30:20.  However, Plaintiffs

7    conceded at hearing that there is no authority supporting their position that an IEP must identify

8    the designated LVN by name for a student to receive a FAPE.  Additionally, the ALJ determined

9    that Defendants "stood ready and willing to provide [David with] a special education," and that

10   they employed a qualified nurse who could "provide the same duration, frequency and modality"

11   of the LVN service set forth in David's IEP.  OAH Decision Legal Conclusions ¶ 28.  The ALJ

12   also found RN Anderson, with twenty-three years' experience practicing as a registered nurse,

13   had "extensive experience assessing and providing direct treatment for students with diabetes,

14   including those who were non-verbal, with autism, and with serious degrees of type-one

15   diabetes."  *Id.* ¶ 19.  The ALJ also found RN Anderson "was directly familiar with [David], his

16   means of communication, his complex diabetic requirements, and how to care for his rapidly

17   changing diabetic needs."  *Id.*  A preponderance of evidence supports the ALJ's finding that RN

18   Anderson "had the requisite experience, training, and credentialing required of her role."  *Id.*

19             A preponderance of the evidence also supports the ALJ's determination that the

20   August 19, 2013 IEP was "reasonably calculated to enable the child to receive educational

21   benefits."  *Rowley*, 458 U.S. at 207, *quoted in* OAH Decision Legal Conclusions ¶ 3.  For

22   instance, the IEP offered David a one-to-one nurse for 420 minutes daily, five days per week.

23   AR 492–526.  It provided David with individual nursing services at home prior to school, during

24   the bus ride to school, the entirety of the school day, the bus ride home, and at David's home after

25   school.  *Id.*  The IEP reviewed his progress and performance, and adopted new goals.  *Id.*  It

26   provided specialized academic instruction in a special day class.  *Id.*  Three independent assessors

27   as well as RN Anderson and LVN Armstrong each testified at the OAH hearing, and all five

28   agreed the August 19, 2013 IEP was appropriate to meet David's unique needs.  The ALJ found

1    that Plaintiffs "failed to provide any [credible] evidence or elicit any [credible] testimony" that

2    indicated David required additional or different nursing services than those offered in the IEP.

3    OAH Decision Legal Conclusions ¶ 17.  The record is clear that, at the very least, the August 19,

4    2013 IEP provided David with the required basic "floor of opportunity."  *See J.L.*, 592 F.3d at

5    947 (observing that schools are obligated to provide "a 'basic floor of opportunity' to disabled

6    students, not a 'potential-maximizing education'" (quoting *Rowley*, 458 U.S. at 197 n. 21));

7    *Anchorage Sch. Dist. v. M.P.*, 689 F.3d 1047, 1057 (9th Cir. 2012) (same).

8               For the foregoing reasons, a preponderance of the evidence supports the

9    conclusion Defendants offered David a FAPE.  Plaintiffs have not met their burden of persuading

10   this court that the ALJ's decision should be reversed.  *J.W.*, 626 F.3d at 438 ("[T]he party

11   challenging the administrative decision bears the burden of persuasion on each claim

12   challenged.").  The court GRANTS Defendants' motion for summary judgment and DENIES

13   Plaintiffs' motion for summary judgment under the IDEA.

14   V.      SECTION 504 OF THE REHABILITATION ACT

15              Under Section 504, "[n]o otherwise qualified individual with a disability in the

16   United States . . . shall, solely, by reason of her or his disability, be excluded from the

17   participation in, be denied the benefits of, or be subjected to discrimination under any program or

18   activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  The Ninth Circuit has stated

19   that:

20              [t]o establish a violation of § 504 of the Rehabilitation Act,
         [Plaintiffs] must show that (1) the student is handicapped within the
21       meaning of the Rehabilitation Act; (2) the student is otherwise
         qualified for the benefit or services sought; (3) the student was
22       denied the benefit or services solely by reason of [his] handicap;
         and (4) the program providing the benefit or services receives
23       federal financial assistance.

24

25   *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).

26              Implementing a valid IEP under the IDEA satisfies the substantive and procedural

27   portions of Section 504.  *See Mark H. v. Lemahieu*, 513 F.3d 922, 933 (9th Cir. 2008).  Because

28

1   Defendants offered David a FAPE under the IDEA, Plaintiffs cannot recover under Section 504.

2   The court GRANTS Defendants' motion for summary judgment and DENIES Plaintiffs' motion

3   for summary judgment under Section 504.

4   VI.    CONCLUSION

5          For the foregoing reasons, the court affirms the ALJ's decision as supported by the

6   preponderance of the evidence.  The record shows that Defendants provided David with a FAPE

7   on and after February 19, 2013 and in the August 19, 2013 IEP.  Defendants' motion for

8   summary judgment is hereby GRANTED, and plaintiffs' motion for summary judgment is

9   DENIED.  This order resolves ECF Nos. 44 and 46.  The Clerk of the Court shall enter judgment

10  in favor of Defendants.  CASE CLOSED.

11          IT IS SO ORDERED.

12   DATED:  October 13, 2016.

_____
UNITED STATES DISTRICT JUDGE